**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DEWEY ARNEL DAVIS, | : | |
| | : | Civil No. 09-2882 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| WARDEN JEFF GRONDOLSKY, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    DEWEY ARNEL DAVIS, Plaintiff pro se
    #64633-004
    F.C.I. Fort Dix
    P.O. Box 2000 (West)
    Fort Dix, New Jersey 08640

**BUMB, District Judge**

    Plaintiff, Dewey Arnel Davis ("Davis"), a federal prisoner confined at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), brings this application challenging his federal court conviction on money laundering charges on the ground that he is actually innocent of money laundering, based upon an intervening change of law by the Supreme Court of the United States in United States v. Santos, 553 U.S. ___, (2008). Davis names Warden Jeff Grondolsky as the respondent in this action.

This Court has reviewed the petition filed by Davis, and for the reasons set forth below, will dismiss the petition for lack of jurisdiction, as it is a prohibited second or successive motion under 28 U.S.C. § 2255.

## I.  BACKGROUND

The following facts are taken from the petition, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

On December 2, 2005, a federal grand jury in the United States District Court for the Southern District of Florida returned an indictment against Davis and other individuals, charging Davis with several counts of drug trafficking and several counts of money laundering.  On May 17, 2006, Davis entered a plea of guilty, pursuant to a plea agreement, to one count of money laundering in violation of 18 U.S.C. § 1956.  Pursuant to the plea agreement, Davis stipulated that he should be sentenced under the United States Sentencing Guidelines ("USSG") § 2S1.1(a)(2) - Laundering of Monetary Instruments; Engaging in Monetary Transactions in property derived from unlawful activity.

On August 24, 2006, Davis was sentenced to 108 months imprisonment with three years supervised release to follow, and forfeiture of $150,000.00.

Davis did not file a direct appeal from his plea or sentence.  However, on August 18, 2007, Davis filed a motion to vacate, set aside and/or correct his sentence under 28 U.S.C. § 2255, in the United States District Court for the Southern District of Florida.  He raised a single challenge that his counsel was ineffective for failing to request a reduction in Davis' sentence based on the application of the safety valve provisions, USSG § 5C1.2 and 18 U.S.C. § 3553(f).

On January 23, 2008, the magistrate judge filed a recommendation that the § 2255 motion be denied.  On February 28, 2008, the district court adopted the findings and recommendations of the magistrate judge, and affirmed denial of the § 2255 motion.

On November 21, 2008, Davis filed an application with the United States Court of Appeals for the Eleventh Circuit for leave to file a second or successive § 2255 motion, pursuant to 28 U.S.C. § 2244(b).  Davis' petition was based on the newly announced decision of the Supreme Court of the United States in United States v. Santos, 553 U.S. ___ , 128 S.Ct. 2020, 170 L.Ed. 2d 912 (2008), which held that "proceeds as that term is used in § 1956 means 'criminal profits' and not criminal receipts, derived from a specified unlawful activity."  The application/petition was denied by the Eleventh Circuit on January 8, 2009.  In denying the petition, the court held that

3

Santos "was a new interpretation of a criminal statute, not a new rule of constitutional law," and therefore, it could not serve as a basis for a second or successive § 2255 motion.

Davis filed this habeas petition under 28 U.S.C. § 2241 on or about June 15, 2009.

## II.   CLAIMS PRESENTED

A.  Guilty Plea Was Not Voluntary, Knowing, or Intelligent

Davis contends that his guilty plea was not voluntary, knowing and intelligent, and must be vacated as it applies to money laundering activities for which he was convicted. Specifically, Davis points to the Supreme Court's recent decision in Santos, which has interpreted the term "proceeds" in the money laundering statute under which he was convicted to mean "profits" and not "receipts" or "gross receipts."  Davis argues that when he entered his guilty plea to the count of conspiracy to commit money laundering, the trial court, prosecutor and defense counsel understood the term "proceeds" to mean "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenues; the total amount brought in," as defined by the Eleventh Circuit in United States v. Silvestri, 409 F.3d 1311, 1333 (11th Cir. 2005).  Davis now contends that he would not have entered a guilty plea to the money laundering count of the indictment if he had been informed that "proceeds" meant "profits" rather than "receipts" or "gross

4

receipts" because the "money transaction[s] were payments or expense in exchange for a quantity of drugs and not profits by the giver." (Petitioner's Memorandum of Law at pp. 9-10). Thus, Davis argues that "the money represented debts incurred for the receipt of drugs and not profits by the giver," or "debts {Davis} owed for the drugs he purchased from his drug source." (Id. at pg. 10).

B.  Actual Innocence Claim

Davis also claims that he is actually innocent of the money laundering statute, which requires that the "transactions involved the proceeds of some lawful activity." 18 U.S.C. § 1956(a)(1)(B)(I) and (ii). Davis states that interpreting "proceeds" to mean "profits" rather than "receipts," "gross receipts," or total revenue, clears him from the necessary conduct to be found guilty of conspiracy to launder money. In other words, Davis argues that it removes evidence that he knew that the cash represented illegal proceeds (profit), that he conducted a financial transaction with the proceeds (profits) of an illegal activity and/or that he conducted the transaction with the intent to promote the carrying on of the lawful activity. Simply put, Davis contends there is no evidence that he delivered any proceeds (profits) to his drug sources, when the delivery of cash was nothing more than receipts owed by him. (Pet. Mem. of Law, at pp. 12-14).

5

III.  DISCUSSION

A.  Standards for a Sua Sponte Dismissal

Section 2243 provides in relevant part as follows:

A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

Davis brings his habeas petition as a pro se litigant.  A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c)The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

B.  The Santos Decision

Davis relies on the Supreme Court's recent decision in Santos to support his claims for habeas relief in this petition.

6

In Santos, the Supreme Court addressed the definition of the term "proceeds" in the federal money laundering statute when applied to an illegal gambling operation. The statute proscribes, inter alia, conducting "a financial transaction which in fact involves the proceeds of specified unlawful activity...." 18 U.S.C. § 1956(a)(1)(emphasis added). The transactions at issue in Santos were: Santos's payments to his employees (runners who gathered bets from customers and collectors who took money from runners and delivered it to Santos) and his payments to winning bettors. See Santos, 128 S.Ct. at 2022-23 (plurality opinion).

Santos is a plurality opinion. Justice Scalia, writing for the plurality (Justices Souter, Thomas, and Ginsburg),[1] argued that there was nothing in the statute to indicate whether "proceeds" meant "profits" or "gross receipts." Since "[the rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them," Justice Scalia contended that the Court should adopt the more "defendant-friendly" rule that the statute only forbids laundering of profits. Id. at 2025.

Justice Stevens concurred in the result, providing the necessary fifth vote for the plurality opinion. He concluded that "proceeds" must mean "profits" where the transactions in question involved "revenue generated by a gambling business that

---

[1] Justice Alito dissented, together with Justices Kennedy and Breyer, and Chief Justice Roberts.

7

is used to pay the essential expenses of operating that business...." Id. at 2033 (Stevens, J., concurring). Justice Stevens's opinion appears to be entirely based on the merger problem:

> Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.

Id. at 2033. Notably, Justice Stevens disagreed with the plurality in arguing that the meaning of "proceeds" depends on the context of the statute's application; the plurality contended that "proceeds" always means "profits." In light of the available legislative history, Justice Stevens would interpret "profits" to mean "gross receipts" except where the perverse result generated by the merger problem obtains. Id. at 2034 n. 7.[2]

---

[2] The plurality also found its conclusion to be justified because it allows the money laundering statute to avoid the "merger problem." Id. at 2026. The merger problem would arise if "proceeds" meant "gross receipts," meaning that:
> [a]nyone who pays for the costs of a crime with its proceeds-for example, the felon who uses the stolen money to pay for the rented getaway car-would violate the money-laundering statute.... Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

Id. at 2026-27. The plurality could not see "why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime."

Justice Scalia wrote that because Justice Stevens's concurring opinion was the swing vote, and because "his vote [was] necessary to the [Court's] judgment, and since his opinion rests upon a narrower ground, the Court's holding is limited accordingly."  Santos, 128 S.Ct. at 2031.

C.  Actual Innocence Claim

Here, Davis contends that he is entitled to habeas relief under § 2241, despite the fact that he had filed a previous § 2255 motion, as well as an application with the United States Court of Appeals for the Eleventh Circuit for leave to file a second or successive § 2255 motion, because he is "actually innocent," and because relief under § 2255 now is barred and, thus, is "inadequate or ineffective."  Cf. In re Dorsainvil, 119 F.3d 245 (3d Cir.1997).  Davis further contends that § 2255 is "inadequate or ineffective" because its gatekeeping provisions have prevented a hearing on the merits of his claim of actual innocence.

As noted by the Court of Appeals for the Third Circuit in Dorsainvil, 119 F.3d at 249, § 2255 has been the "usual avenue" for federal prisoners seeking to challenge the legality of their confinement.  See also Chambers v. United States, 106 F.3d 472, 474 (2d Cir. 1997); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir. 1977); United States v. Walker, 980 F.

---

Id. at 2027.

9

Supp. 144, 145-46 (E.D.Pa. 1997)(challenges to a sentence as imposed should be brought under § 2255, while challenges to the manner in which a sentence is executed should be brought under § 2241). Motions under § 2255 must be brought before the Court which imposed the sentence. See 28 U.S.C. § 2255. In addition, before a second or successive § 2255 motion is filed in the district court, the petitioner must move in the appropriate court of appeals for an order authorizing the district court to consider the petition on the grounds of either (1) newly-discovered evidence that would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty of the offense or (2) a new rule of constitutional law made retroactive by the Supreme Court. 28 U.S.C. §§ 2244(a), 2255.

Section 2255, however, contains a safety valve where "it appears that the remedy by motion is inadequate or ineffective to test the legality of [Petitioner's] detention." In Dorsainvil, a case involving a Bailey claim, the Third Circuit held that the remedy provided by § 2255 is "inadequate or ineffective," permitting resort to § 2241 (a statute without timeliness or successive petition limitations), where a prisoner who previously had filed a § 2255 motion on other grounds "had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate." 119 F.3d at 251. The court emphasized, however, that its holding was not

intended to suggest that § 2255 would be considered "inadequate or ineffective" merely because a petitioner is unable to meet the stringent gatekeeping requirements of § 2255.  Id.  To the contrary, the court was persuaded that § 2255 was "inadequate or ineffective" in the unusual circumstances presented in Dorsainvil because it would have been a complete miscarriage of justice to confine a prisoner for conduct that, based upon an intervening interpretation of the statute of conviction by the United States Supreme Court, may not have been criminal conduct at all.  Id. at 251-52.

Thus, under Dorsainvil, this Court would have jurisdiction over Davis' petition if, and only if, Davis demonstrates (1) his "actual innocence" (2) as a result of a retroactive change in substantive law that negates the criminality of his conduct (3) for which he had no other opportunity to seek judicial review. 119 F.3d at 251-52; Cradle v. U.S. ex rel. Miner, 290 F.3d 536, 539 (3d Cir. 2002); Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).

In this case, Davis contends that he is actually innocent of violating the money laundering statute because, under Santos, there is no evidence to show that he delivered any proceeds or profits to his drug sources.[3]

---

[3] Davis also claims that he would not have pled guilty had he known about the Santos's decision, which interpreted the term "proceeds" to mean "profit" rather than receipts or gross receipts.  This argument essentially falls under the umbrella of

11

A freestanding claim of actual innocence has never been explicitly recognized by the Supreme Court. See House v. Bell, 547 U.S. 518 (2006); Baker v. Yates, 2007 WL 2156072 (S.D. Cal. July 25, 2007) ("In practice, however, the Supreme Court has never explicitly held that a freestanding innocence claim is available during habeas review, even in a death penalty case."). In a noncapital case such as this, an assertion of actual innocence is ordinarily "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404 (1993); Whitby v. Dormire, 2 Fed. App'x 645, at *1 (8th Cir. 2001); Mansfield v. Dormire, 202 F.3d 1018, 1023-24 (8th Cir. 2000).

In House, the United States Supreme Court was presented with a freestanding claim of innocence, but it "decline[d] to resolve this issue." House, 126 S.Ct. at 2087. The Supreme Court did, however, provide some insight into what might be required to prove such a claim. Id. (noting, "whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it."). The Court recognized, as it did in Herrera, that the standard for any freestanding innocence claim would be "'extraordinarily high,'" id. (quoting Herrera, 506 U.S. at 417), and it would require more than the showing required to make a

---

Davis' "actual innocence" claim, and thus, does not require separate consideration.

12

successful gateway innocence claim.  <u>Id</u>. at 2087 ("The sequence of the Court's decisions in <u>Herrera</u> and <u>Schlup</u>[4]-first leaving unresolved the status of freestanding claims and then establishing the gateway standard-implies at the least that <u>Herrera</u> requires more convincing proof of innocence than <u>Schlup</u>.").  Even assuming that such a freestanding claim could be raised, Davis has not met or even approached an "extraordinarily high" standard here by asserting only that "proceeds" under the money-laundering statute at issue here, 18 U.S.C. § 1956(a), means "profits," as the Supreme Court concluded in <u>United States v. Santos</u>, 128 S.Ct. 2020 (2008).

Moreover, neither the Supreme Court nor any other federal court has held that <u>Santos</u> is retroactive to cases on collateral review, <u>see</u>, <u>e.g.</u>, <u>Brown v. United States</u>, 2009 WL 2849776, *6 (E.D. Tenn. Aug. 31, 2009)("The Supreme Court, however, has not held that <u>Santos</u> should be applied retroactively."), although some courts have assumed, for the sake of argument, that <u>Santos</u> sets forth a change in a substantive rule that would apply retroactively to otherwise timely § 2255 motions.  <u>See</u>, <u>e.g.</u>, <u>United States v. Ramos</u>, 2009 WL 2485592, *9 n. 3 (S.D. Tex. Aug. 7, 2009).  Other courts have recognized that "<u>Santos</u> has limited precedential value."  <u>United States v. Demarest</u>, 570 F.3d 1232,

---

[4]   <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).

13

1242 (11th Cir. 2009).  As the Eleventh Circuit Court of Appeals explained,

> Three parts of Justice Scalia's four-part opinion are for a plurality of justices, and those parts do not state a rule for this case.  See Santos, 128 S.Ct. at 2022-45. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'"  "Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed. 2d 260 (1977)(quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923, n. 15, 49 L.Ed.2d 859 (1976)(opinion of Stewart, Powell, and Stevens, JJ.)).  The narrow holding in Santos, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation.  The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking.  Demarest, 570 F.3d at 1242 (concluding that, consequently, Santos afforded the defendants no relief from their money-laundering convictions).  Even courts willing to apply Santos retroactively, for the sake of argument, have found that it does not apply to drug-smuggling or other drug-trafficking operations, that is, to any conduct other than conduct of an illegal gambling operation.  See Ramos, 2009 WL 2485582 at *12 (citing cases).

This court is persuaded that, assuming without deciding that Santos applies retroactively to cases on collateral review, the fragmented decision in Santos must be limited to its narrowest grounds.  Marks, 430 U.S. at 193; Demarest, 570 F.3d at 1242 (citing Marks).[5]  Those narrowest grounds are defined by Justice

---

[5] "When it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court."  United States v. Alcan Aluminum Corp., 315 F.3d 179, 189 (2d Cir. 2003)(citing Rappa v. New Castle County, 18 F.3d 1043, 1058 (3d Cir. 1994)).  As discussed above, between the plurality

Stevens's concurrence.  Here, Davis' case falls precisely into the kind of case to which Justice Stevens would not apply the rule of lenity to define "proceeds" under § 1956 as "profits"; rather, it is the kind of case in which he explained that legislative history demonstrates that "proceeds" means "gross revenues," because it is a case involving sale of contraband and the operation of a crime syndicate involving such sales.  Santos, 128 U.S. at 2032 & n. 3 (Stevens, J., concurring).  Thus, Santos simply affords no basis for concluding that Davis is "actually innocent" of the money-laundering charges to which he pleaded guilty.

Accordingly, this Court finds that, as applied here, Santos is limited to its facts; it stands only for the proposition that the money laundering statute does not make criminal the use of the revenue from an illegal gambling operation to pay for the expenses involved in running the operation.  See Bull v. United States, Nos. CV 08-4191 CAS, CR 04-402 CAS, 2008 WL 5103227, at *8 (C.D. Cal. Dec.3, 2008)("[G]iven Justice Stevens' opinion that "proceeds" means "profits" only for the purposes of laundering funds from an illegal gambling business, the Court cannot conclude that Santos announces a "new rule" defining the term "proceeds" to mean "profits" in all statutes.");  United States

---

and Justice Stevens's opinion in Santos, no "single rationale explaining the result enjoys the assent of five Justices." Marks, 430 U.S. at 193.

v. Orosco, 575 F. Supp. 2d 1214, 1218 (D. Colo. 2008)("[T]he only binding aspect of [Santos is] its specific result relating to ... illegal gambling on the facts of the case.").

The result reached here fits with reasoning employed by both the Santos plurality and Justice Stevens's concurrence: Davis' conviction for money laundering does not pose the merger problem. In Santos, the defendant's payments to his employees and winning bettors were necessary transactions for someone running an illegal gambling operation; considering those payments to be money laundering would have made the same conduct constitute both illegal gambling and money laundering.

Consequently, Davis is not entitled to relief on his "actual innocence" claim. Davis has failed to demonstrate circumstances that would render § 2255 an inadequate or ineffective remedy. Santos does not represent an intervening change in the law that renders non-criminal the crime for which Davis was convicted. Davis also fails to demonstrate any circumstances amounting to a "complete miscarriage of justice" that would justify application of the safety-valve language of § 2255 rather than its gatekeeping requirements. Therefore, this Petition must be considered a second or successive motion under § 2255, which Davis has not received authorization to file, and over which this Court lacks jurisdiction.[6]  28 U.S.C. § 2255.

---

[6] Although this Court is reclassifying the petition as a § 2255 motion, no Miller notice and order is necessary to afford

Whenever a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed."  28 U.S.C. § 1631.

Because Davis states that he has already petitioned the Court of Appeals for the Eleventh Circuit for leave to file a successive § 2255 motion based on the Supreme Court's ruling in Santos, which request was denied by the Eleventh Circuit, and because Davis fails to allege any of the predicate grounds permitting a second or successive § 2255 motion, this Court finds that it would not be in the interests of justice to transfer this Petition to the United States Court of Appeals for the Eleventh Circuit.  Accordingly, this Petition must be dismissed.

---

Davis an opportunity to raise additional § 2255 grounds.  The purpose of the Third Circuit's decision in United States v. Miller, 197 F.3d 644 (3d Cir. 1999), was to provide fair warning to petitioners whose petitions were being recharacterized as § 2255 motions so that they could ensure that all their claims were fully raised in a single all-encompassing § 2255 petition. Such warning, the Miller court reasoned, is necessary because petitioners will thereafter be unable to file "second or successive" § 2255 petitions without certification by the Court of Appeals.  Because Davis in this case has already filed a § 2255 motion which was addressed by the sentencing Court, and because the current petition is itself "second or successive," no purpose would be served by a Miller notice.

17

III. <u>CONCLUSION</u>

For the reasons set forth above, this action for habeas relief under § 2241 will be dismissed with prejudice for lack of jurisdiction, because it is a second or successive motion under § 2255 challenging petitioner's federal sentence. An appropriate order follows.

<u>s/Renée Marie Bumb</u><br>
RENÉE MARIE BUMB<br>
United States District Judge

Dated: <u>February 8, 2010</u>